UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 16-12818 |
| DEBORAH ANN VINSON | SECTION "B" |
|    Debtor | CHAPTER 11 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| STIRLINGS, LLC and KATHLEEN ROBINSON | ADV. PROC. No. 17-1025 |
|    Plaintiffs | |
| v. | (Consolidated with Adversary Proceeding No. 17-1042) |
| DEBORAH ANN VINSON | |
|    Defendant | |

# MEMORANDUM OPINION

This matter came before the court on December 12 and 13, 2017 as a trial on the complaint of Stirlings, LLC and Kathleen Robinson (collectively, the "plaintiffs") seeking declaratory relief that the debtor, Deborah Ann Vinson ("Vinson"), had no interest in a deposit in the amount of $105,000 that the plaintiffs had put up in connection with an offer to purchase real estate owned by Vinson. The disputed $105,000 deposit is currently being held by the Clerk of Court in the registry of the Louisiana Civil District Court, Parish of Orleans. In the interest of judicial economy, the court consolidated a subsequently filed adversarial proceeding (Adversary Proceeding No. 17-1042) with this proceeding on August 4, 2017.[1] In the second adversary proceeding, Vinson requests turnover of the same $105,000 deposit and

---

[1] Rec. Doc. 19 in case no. 17-1025.

1

objects to the proof of claim filed by Stirlings and/or Robinson[2] in Vinson's Chapter 11 bankruptcy case. For the reasons set forth below, the court holds that the plaintiffs are entitled to the return of the deposit, and that the amended proof of claim filed on July 12, 2017 was not an amendment of the March 20, 2017 proof of claim, but rather a new and untimely filed proof of claim.

**I.      Background Facts:**

Vinson owned a house located at 2503 St. Charles Avenue in New Orleans, Louisiana. On May 20, 2016, Stirlings and Vinson executed a Louisiana Residential Agreement to Buy or Sell (purchase agreement) regarding the property.[3] Vinson agreed to sell and Stirlings agreed to buy the Property for the sum of $2,100,000.[4] In conjunction with the purchase agreement, Stirlings paid Vinson a $105,000 deposit. The sale of the property was never consummated, and Stirlings filed suit in Louisiana state court seeking the return of the deposit. On November 17, 2016 Vinson filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. Stirlings and Robinson filed this adversary proceeding seeking the return of the deposit plus stipulated damages and attorney's fees, and then filed proof of claim number 18, thus subjecting themselves to the jurisdiction of this court. The parties in this case allege many causes of action, but the crux of the argument between them

---

[2] Stirlings, LLC is wholly owned and managed by Robinson. Vinson refers to all of the actions taken as taken by Robinson, and Robinson asserts that she was acting at all times in this transaction through Stirlings. The court will refer to Stirlings in this opinion, unless it specifically means Robinson personally.
[3] Trial Exhibit 69.
[4] The agreement was signed by Vinson personally on May 21, 2016 and by "Kathleen Robinson on behalf of Stirlings, LLC" on June 23, 2016, but is referred to by the parties as the May 20, 2016 Purchase Agreement.

is who should be entitled to the $105,000 deposit put up by Stirlings when it signed the purchase agreement to buy Vinson's house.[5]

## II. Legal Analysis:

### A. The disposition of the $105,000 deposit

Vinson's argument centers around the idea that Stirlings and/or Robinson somehow misled or tricked Vinson into thinking that Stirlings was buying the house on St. Charles Avenue for residential use. Vinson's argument focuses on two things: 1) that the use of the Louisiana Residential Property Purchase Agreement form for the offer to buy the house indicated that Stirlings was making a residential offer; and 2) that Stirlings did not fulfill its obligation under the purchase agreement to make good faith effort to secure the financing in a timely manner, and related to this, that Stirlings sought commercial financing rather than a residential mortgage, also indicated that Stirlings was not in good faith.

Vinson first argues that Stirlings misrepresented its intentions with regard to what type of real estate transaction it was intending to enter into. Vinson asserts that since the offer was submitted on a Louisiana Residential Property Purchase Agreement form, the offer is per se evidence of the plaintiffs' intention for the transaction to be for residential use and that Stirlings intended to apply for a residential real estate loan. The court disagrees. The use of a Louisiana Residential Property Purchase Agreement form is a requirement when a transaction involving a residential real property involves parties represented by a licensed real estate agent.[6] "Residential real property" is defined as "real property consisting of one

---

[5] Stirlings' amended complaint states causes of action for declaratory relief, breach of contract, and negligence, and Vinson's complaint states causes of action for turnover of property of the estate, fraud in the inducement, fraudulent misrepresentation, negligent misrepresentation, breach of contract, and mental anguish.
[6] La. R.S. 37:1449.1 states:

3

or not more than four residential dwelling units, which are buildings or structures each of which are occupied or intended for occupancy as single family residences." The St. Charles property fits squarely within this definition. Although Vinson makes much of the fact that the offer was submitted on the Louisiana Residential Property Purchase Agreement form, suggesting that the use of the form shows that Stirlings was attempting to hide from Vinson the intention to use the property commercially after the sale was consummated, the statute makes clear that where, as here, a licensed real estate agent is involved in a transaction involving "residential real property," this form must be used. Under the plain language of the statute, the intent of the parties as to the use of the property after the transaction has been completed is not dictated by the use of the form. Rather, it is the use and nature of the property itself at the time the "written agreement for the sale or purchase" is made and the involvement of a licensed real estate agent that prescribe the use of the Louisiana Residential Property Purchase Agreement form. Further, even if the use of the form was somehow suggestive of the proposed use of the property post-sale, the court finds that the evidence presented at trial, taken as a whole, does not suggest that Stirlings or Robinson were attempting to conceal that their plan for the property was to use it as a bed and breakfast.

---

A. A licensee representing either the buyer or seller of residential real property shall complete the purchase agreement form prescribed by the Louisiana Real Estate Commission in making an offer to purchase or sell residential real property. No person shall alter the purchase agreement form; however, addendums or amendments to the purchase agreement form may be utilized.
B. The promulgation of this form shall be conducted in accordance with the Administrative Procedure Act[1] no later than July 1, 2007.
C. (1) As used in this Section, the term "purchase agreement form" shall mean a document in a form prescribed by the Louisiana Real Estate Commission as a written agreement for the sale or purchase of residential real property.
(2) As used in this Section, the term "residential real property" means real property consisting of one or not more than four residential dwelling units, which are buildings or structures each of which are occupied or intended for occupancy as single family residences.
D. The provisions of this Section shall apply to the sale of residential real property on or after January 1, 2008.

4

After reviewing the entire record, the court finds that there are no facts that clearly establish Stirlings' alleged intent to misrepresent its intentions or commit fraud on Vinson such that Vinson would be tricked into thinking that Stirlings' was seeking to use the property as a residence. To the contrary, the record establishes that Stirlings was forthright about its intention to use the house as a bed and breakfast.[7] When Kathleen Robinson signed the purchase agreement she signed in her capacity as agent for Stirlings, LLC and subsequently asked Vinson for assistance in getting the property rezoned for mixed use as a bed and breakfast before the closing of the sale, which Vinson declined to do. At trial, Vinson admitted that she was made aware of the Stirlings' intentions to use the property as a bed and breakfast no later than five days after the purchase agreement had been signed.[8] The court concludes that there is a substantial amount of evidence contrary to Vinson's theory that Stirlings was trying to hide its intention to use the property commercially.

The court next turns to Vinson's argument that Stirlings breached the contract by its failure to apply for financing that conformed to the purchase agreement. The purchase agreement states:

> This sale is conditioned upon the ability of BUYER to borrow with this Property as security for the loan 70.000% of the Sale Price by a mortgage loan or loans at an initial interest rate not to exceed 5.500% per annum, interest and principal, amortized over a period of not less than 5 years, payable in monthly installments or on any other terms as may be acceptable to the BUYER provided that these terms do not increase the cost, fees or expenses to the SELLER. The loan shall be secured by Fixed Rate Mortgage.

Contrary to the arguments of Vinson, no mention is made in this section of the purchase agreement that the buyer must seek a residential mortgage loan. Just because the form used

---

[7] Trial transcript of 12/12/17 at pp. 46-52.
[8] *Id* at p. 49.

5

was a Louisiana Residential Property Purchase Agreement, does not automatically include a requirement that a residential mortgage loan be sought by the buyer. As long as the loan sought fit the financing requirements of the purchase agreement, it does not matter whether the financing party called it a residential loan, a commercial loan, or gave it some other designation. The court holds that Stirlings was not required by the plain terms of the purchase agreement to seek a residential mortgage loan. Nor was she prohibited from seeking a commercial loan, or a loan by any other name that met the conditions in the purchase agreement.

The term sheet from Whitney Bank, a potential lender, dated May 19, 2016 sets forth the financing Robinson discussed with the bank in her initial discussions with the bank about financing the purchase of the property.[9] The term sheet states that it is for a loan in the amount of $1,536,500 to finance the purchase of real estate located at 2503 St. Charles Ave., New Orleans, LA at a 5.5% fixed interest rate, with maturity date being 5 years from closing, and interest and principal due monthly based on a 15 year amortization. The term sheet also states that the loan shall be lesser of 70% LTV or 70% LTC. The term sheet is signed by James E. Sablich, III. At the trial, Mr. Sablich testified that he discussed this loan, which conforms to the purchase agreement terms, with Robinson, and that he considered her initial request to be simply for "financing strictly to buy the building."[10]

Vinson makes much of the fact that Robinson did not submit a formal residential loan application, but Sablich testified that this was not required, and that he considered her email

---

[9] Trial Exhibit 8.
[10] Trial transcript of 12/12/17 at p. 179.

to be a written application for a loan.[11] He testified that he would consider the emails and information sent to him by Robinson to be a loan application.

In *Dozier v. Smith*, 2014 WL 539000 (La. Ct. App. 1 Cir.), the Louisiana First Circuit Court of Appeals addressed whether Smith, the prospective purchaser of a house in Baton Rouge, was in good faith when, through no fault of his own, he was unable to acquire financing in accord with the purchase agreement. Dozier asserted that Smith was not in good faith in seeking the appropriate financing because, in addition to the amount required by the purchase agreement, Smith sought funds to repair the house.[12] In affirming the trial court's decision, the First Circuit ruled that Smith had made a good faith effort to secure financing even though Smith did attempt to obtain a loan that included additional financing for repairs.

The court noted that Smith satisfied his duty to seek financing in good faith when, during his first attempt to secure funds, he sought financing that conformed to the purchase agreement.[13] That Smith later attempted to find favorable financing that included additional funding for renovations did not vitiate his initial fulfillment of the obligation to seek financing in good faith. Instead, the court found the evidence showing that Smith had approached five separate financial institutions which all declined to provide financing which met the terms contained in the purchase agreement strengthened the fact that Smith was in good faith.[14]

---

[11] Trial transcript of 12/12/17 at p. 195-96.
[12] *Dozier* at 4.
[13] *Id* at 6; *See also Weger v. Silveria*, 460 So.2d 49, 51 (La. App. 1st Cir.1984) (stating that a buyer need only make one good faith effort to fulfill the condition of securing financing.); *Garsee v. Bowie*, 852 So.2d 1156, 1161–62 (La. App. 2 Cir. 2003).
[14] *Dozier* at 4-5.

In the case before this court, the evidence shows that Whitney Bank did consider both a loan that conformed to the terms in the purchase agreement as well as a different loan that include additional renovation costs, and that the bank was simply not willing to make either type of loan.[15]

Accordingly, because a buyer is only required to make one good faith effort to fulfill the condition of securing financing, the court finds that Robinson acted in good faith when she initially sought financing from Whitney Bank.[16] While not necessary, Robinson continued to seek financing from other banks, all of which declined the request. The court finds that the additional attempts to secure financing only emphasize Robinson's good faith in her efforts to secure financing. The fact that Robinson made inquiries about additional financing does not vitiate the initial good faith attempt to secure funding in conformity with the terms of the purchase agreement.

Vinson additionally contends that Stirlings failed to satisfy the obligation to obtain financing in good faith because some of the loans Robinson applied for sought additional money for remodeling the property. Vinson relies on *Harris v. James,* 2012 WL 1580517 (La.App. 1 Cir.), where the Louisiana First Circuit Court of Appeals affirmed a trial court's finding that the purchaser did not make a good faith application for a loan, as required by a purchase agreement. The purchaser sought to borrow 100% of the purchase price of the home, rather than 80% required by the purchase agreement. The court finds that *Harris* is distinguishable from this case, however, because despite the purchaser in *Harris* requesting an amount that was nonconforming to the purchase agreement, the bank actually offered him

---

[15] Trial Exhibits No. 8, 69. Trial transcript of 12/12/17 at p. 209.
[16] *See* Weger v. Silveria, 460 So.2d 49, 51 (La.App. 1 Cir.1984); Garsee v. Bowie, 852 So.2d 1156, 1161–62. (La.App. 2 Cir. 2003).

a loan conforming to the purchase agreement, and the purchaser rejected the loan that conformed to the purchase agreement terms.

Robinson has also shown that she made the requisite good faith effort to obtain financing in accordance with the purchase agreement within the agreement's fifteen day requirement. In fact Robinson had begun discussions about the loan with Whitney before the purchase agreement was even signed.

### B. The Purchase Agreement is Null and Void

The purchase agreement also contains the following language:

> RETURN OF DEPOSIT: The Deposit shall be returned to the BUYER and this Agreement declared null and void without demand in consequence of the following events:
> …
> 2) If this Agreement is subject to BUYER's ability to obtain a loan and the loan is not obtained by the date set forth in … this Agreement but only if the BUYER has made timely application for the loan and made good faith efforts to obtain the loan…

Vinson's argument is that Stirlings did not make a timely application for the proper type of loan in good faith, and therefore is not entitled to the return of the deposit under the section of the purchase agreement entitled "Return of Deposit."

Under Louisiana law, parties may enter into a contract that is dependent upon a suspensive condition, such that the contract's effects and the parties' contractual obligations are delayed until an uncertain event occurs at a later time.[17] The word "dependent" does not mean that the obligation does not exist without the uncertain event, but rather that the enforceability of the obligation is subject to the occurrence of the uncertain event.

---
[17] *See* La. Civ. Code Ann. art. 1767.

It is commonplace in real estate transactions for the initial contract, i.e. the purchase agreement or buy/sell agreement, to be subject to a suspensive condition. For example, the parties generally agree that the buyer's obligation is subject to the suspensive condition of the buyer obtaining credit from a third party.[18] The buyer does not have to perform until that credit, which was uncertain at the time the obligation is incurred, is obtained, nor does the seller have a right to demand performance from the buyer until that uncertain event occurs.[19] Nevertheless, the obligation does exist, and therefore, though it may not yet be enforced, it already binds the parties in a way that allows the buyer to take measures in preservation of his right and places both parties under a duty of good faith that bars any action of theirs that would prevent the happening of the uncertain event.[20]

Louisiana courts have held that a buyer's inability to obtain loan financing allows for the invocation of a purchase agreement's suspensive condition solely for the buyer's benefit of terminating the purchase agreement.[21] The court in *Winston v McBerry*, 158 So.2d 274 (La. Ct. App. 4th Cir. 1963) affirmed a judgment ordering the return of a deposit made by the prospective purchaser of real property, upon evidence that the purchaser made a bona fide effort to procure the financing upon which the purchase was contingent. The purchaser's effort consisted of applications at two lending associations for a mortgage loan of $8,500, which were denied, in one instance because the desired loan exceeded 70 percent of the

---

[18] *See* § 5.4.Express and implied conditions, 5 La. Civ. L. Treatise, Law of Obligations § 5.4 (2d ed.).
[19] *See Hampton v. Hampton, Inc.,* 713 So.2d 1185, 1190 (La. Ct. App. 1st Cir. 1998).
[20] *See, e.g.*, La. Civ. Code Ann. art. 423; *Century 21 Acadia Realty and Development Co., Inc. v. Brough,* 393 So.2d 287, 289 (La. App. 1st Cir.1980) (stating that a purchaser must, in good faith, make reasonable efforts to obtain the agreed to loan. If a suspensive condition remains unfulfilled because of the purchaser's fault, it will be presumed fulfilled, and the condition may not be invoked as a defense to the contract's enforcement.).
[21] *See Graham v. Chesapeake Louisiana, L.P.*, 2013 WL 5673858 (W.D. La. 2013), aff'd, 568 Fed.Appx.307 (5th Cir. 2014) (buyer's ability to obtain financing was a suspensive condition of sale.); *Dozier v. Smith,* 2014 WL 539000 (La. Ct. App. 1st Cir.) (purchase agreement for a house in Baton Rouge was null and void after the purchaser was, through no fault of his own, unable to acquire financing in accord with the purchase agreement).

purchase price of the property, and in the other because the association's agents had been unsuccessful in obtaining an appraisal of the property. The purchaser's inability to obtain the necessary financing relieved her of any obligations under the agreement to purchase, the court explained, since her performance thereunder was conditioned upon her ability to obtain an adequate loan.

Similarly, in *Kansas v. Schaeffer*, 299 So.2d 474 (La. Ct. App. 4th Cir. 1974), the Louisiana Fourth Circuit Court of Appeals held a purchase agreement between a buyer and seller of real estate was null and void after the buyer was unsuccessful in obtaining financing in conformity with the purchase agreement. The court found that despite the buyer's diligent efforts to obtain the financing which was a precondition to performance under the agreement of sale with the owner of the property she was unable to do so. The court looked to the testimony of the buyer, the real-estate agent handling the transaction, and representatives of a number of lending institutions. The testimony showed that the buyer applied unsuccessfully for a mortgage loan to at least two banks, and contacted two other lending institutions concerning financing. Since the purchase was contingent upon a loan which was determined to be unobtainable, the court ruled that the agreement of sale became null and void, and it affirmed the trial court's judgment ordering the return of the buyer's deposit.

The facts in this case are similar to the cases mentioned above. The sale of the property at 2503 St. Charles Avenue was a purchase agreement made contingent upon the suspensive condition of Stirlings' ability to obtain credit for the purchase. Thus, although both parties allege that the other is in breach of the contract, since Stirlings was unable to acquire the proper financing, this court finds as a matter of law, the suspensive condition was

11

never fulfilled and thus the purchase agreement failed. Thus, Stirlings is entitled to the return of the deposit, and there was no breach of the contract.

### C. The proofs of claim

On March 20, 2017 Proof of Claim number 18 was filed into the record of Vinson's main bankruptcy case. The claim form listed Kathleen Robinson as the creditor and also listed Stirlings, LLC in the blank provided for "Other names the creditor used with the debtor." The claim amount was listed as $105,000, and the basis for the claim was listed as "Deposit." A copy of the May 20, 2016 purchase agreement was attached, and the claim did not list any amounts for stipulated damages, attorney's fees or interest. March 20, 2017 was the date set by the court as the last day to file proofs of claim in the Vinson Chapter 11 case.[22] On July 12, 2017, an amendment to proof of claim number 18 was filed into the record. This proof of claim form stated that the creditor was "Kathleen Robinson, as manager for Stirlings, LLC," and again listed Stirlings, LLC as another name for the creditor. The basis for this claim was listed as "Breach of Contract, deposit," and the amount of the claim was listed as "Total damages are likely in excess of $400,000, but are not fully quantifiable at this time. Stirlings damages include $105,000.00 for return of a deposit, $210,000 in stipulated damages, $1,400 for furniture never provided to Stirlings, and other currently unquantified damages.[23]

---

[22] Rec. Doc. 64. Order dated January 25, 2017.
[23] The court notes that the amendments to the pleadings in the adversary proceeding track the amendments to the proof of claim. The complaint first filed by Stirlings on March 1, 2017 sought only to recover the $105,000 deposit. Thereafter Vinson filed a counterclaim seeking not only to keep the deposit, but for stipulated damages, and other damages. On July 5, 2017 Stirlings filed an amended complaint alleging breach of contract, and seeking for the first time stipulated damages, attorney's fees and other damages.

The equitable determination to allow or disallow an amendment to a proof of claim as timely filed is entrusted to the sound discretion of the bankruptcy court.[24] "Ordinarily, amendment of a proof of claim is freely permitted so long as the claim initially provided adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable."[25] The standard can be judged by evaluating three criteria:

> First, the proposed amendment must not be a veiled attempt to assert a distinctly new right to payment as to which the debtor estate was not fairly alerted by the original proof of claim. Second, the amendment must not result in unfair prejudice to other holders of unsecured claims against the estate. Third, the need to amend must not be the product of bad faith or dilatory tactics on the part of the claimant.[26]

Here, the court finds that the amendment should not be permitted. The second, and untimely filed proof of claim, asserts new claims, that although related to the first proof of claim insofar as they arise out of the same failed real estate transaction, ask for additional (and significantly large for this estate) amounts of money, under new theories of law. The additional amounts in the second proof of claim also would significantly impair any recovery for the other unsecured creditors. Because the proposed amendment is not just to cure a technical defect in the first filed claim, or to increase an unknown amount previously asserted in the first filed claim, the court exercises its discretion and holds that the second proof of claim is untimely filed. Because the second proof of claim was untimely filed, the court need not rule as to the claims for stipulated damages, attorney's fees and the other claims set forth. Other than the claim as to the $105,000 deposit, the remaining parts of the claim are disallowed in their entirety.

---

[24] *In re Hemingway Transport*, 954 F.2d 1 (1st Cir. 1992).
[25] *In re Unioil, Inc.*, 962 F.2d 988, 992 (10th Cir. 1992).
[26] *In re Kilgore Meadowbrook Country Club, Inc.* 315 B.R. 412, 422 (Bankr. E.D.Tex. 2004), (*citing Woburn Associates v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 10 (1st Cir. 1992).

### III. Conclusion

For the reasons set forth above, the court finds that Stirlings is entitled to the return of the deposit, and that the amended proof of claim filed on July 12, 2017 was not an amendment of the March 20, 2017 proof of claim, but rather a new and untimely filed proof of claim.

New Orleans, Louisiana, May 22, 2018.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge